UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

CHELSEY OMILIAN,

          File No.

    Plaintiff,

          Hon.

v.

MICHAEL BEDFORD, Van Buren
County Prosecutor, in his individual and official
capacities;
SCOTT HERBERT,
Police Chief for the Village of Mattawan in his
individual and official capacities;
and
VILLAGE OF MATTAWAN, MICHIGAN,

    Defendants.

_____/

# COMPLAINT AND JURY DEMAND

## COMPLAINT

Plaintiff, Chelsey Omilian, by her attorneys, Pinsky, Smith, Fayette &

Kennedy, LLP, represents:

### Jurisdiction, Venue and Parties

1.    This is an action filed pursuant to 42 U.S.C § 1983, seeking to remedy

violations of the Equal Protection Clause of the Fourteenth Amendment to the U.S.

Constitution, the Fourth Amendment to the U.S. Constitution, and Michigan law, including the Michigan Elliott-Larsen Civil Rights Act, Mich. Comp. Laws § 37.2101 *et seq.*

2.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367(a).

3.      Plaintiff resides in Kalamazoo County, Michigan, and the Western District of Michigan, Southern Division.

4.      Defendant Michael Bedford is an individual who is the elected Prosecutor for Van Buren County and a resident of Van Buren County, Michigan, and the Western District of Michigan, Southern Division.

5.      Defendant Scott Herbert is the Police Chief for Defendant Village of Mattawan. Upon information and belief, he is a resident of Van Buren County, Michigan, and the Western District of Michigan, Southern Division.

6.      Defendant Village of Mattawan ("Village") is a municipal corporation within Van Buren County, Michigan, and the Western District of Michigan, Southern Division.

7.      Venue is proper within this judicial district under 28 U.S.C. § 1391(b).

## Statement of Facts

8.      Plaintiff is female and a veteran of the U.S. Navy, in which she served on active duty from September 2009 until September 2013, when the Navy honorably discharged her.

9.      Defendant Village's Police Department hired Plaintiff to a position as a uniformed, sworn police officer on September 11, 2017.

10.     Plaintiff was the only female police officer on the Village's police force.

11.     During Plaintiff's tenure as a Mattawan police officer, Plaintiff was a patrol officer. She responded to calls for help, traffic stops, effectuated warrants, and performed other general law enforcement officer duties.

12.     On November 3, 2017, Plaintiff responded to a complaint of a stolen automobile. Another officer, Officer Mitchell Matuz, initially received the complaint, conducted a preliminary investigation, and then briefed Plaintiff at the end of his shift to permit her to continue the investigation. The complainant, Holly Zantjer, advised that Gary Kingsbury had stolen her vehicle.

13.     This was the second time that Mr. Kingsbury stole Ms. Zantjer's vehicle. Plaintiff had investigated Mr. Kingsbury's theft of the vehicle the first time as well. In the first instance, Plaintiff recovered Ms. Zantjer's vehicle from a location where it had been abandoned and returned it to Ms. Zantjer.

14.     During the first incident, Plaintiff worked with Mr. Kingsbury's parole officer, Officer Robertson, to find Mr. Kingsbury. While attempting to locate Mr. Kingsbury, Plaintiff and Officer Robertson learned that Mr. Kingsbury was no

3

longer living at the address he reported to Officer Robertson, thereby violating his parole.

15.     Accordingly, Plaintiff knew that Officer Robertson had revoked Mr. Kingsbury's parole, and that there was a warrant out for his arrest as a parole absconder.

16.     Plaintiff contacted Ms. Zantjer, who informed Plaintiff that she believed the vehicle was abandoned at a nearby Shell gas station. Expecting the vehicle to have been abandoned as it was the first time when she helped Ms. Zantjer, Plaintiff agreed to drive Ms. Zantjer to the vehicle in Plaintiff's marked patrol car.

17.     However, when Plaintiff located the vehicle at the intersection of Main Street and the driveway for the Formula K Equipment business in Mattawan, she saw it was occupied. Plaintiff observed Mr. Kingsbury driving the vehicle, with a female passenger, later identified as Ms. Lacie Tutt, in the front seat. Unbeknownst to Plaintiff at the time, there was a second passenger, Ms. Cassie Marschall, laying down in the backseat, attempting to avoid being seen.

18.     From her previous interactions with Mr. Kingsbury, Plaintiff knew that Mr. Kingsbury was well-known to carry a .38 firearm, and Ms. Zantjer confirmed that she recently saw Mr. Kingsbury with the gun.

19.     Plaintiff also knew that Mr. Kingsbury was likely in possession of and/or under the influence of illegal substances, usually methamphetamines. Ms.

4

Zantjer had shown Plaintiff Facebook messages from Mr. Kingsbury in which he indicated he had taken the vehicle to go pick up illegal substances.

20.     Plaintiff reasonably believed that Mr. Kingsbury would be armed and dangerous at the time she first spotted him unlawfully operating Ms. Zantjer's stolen vehicle.

21.     Upon information and belief, all three individuals in the vehicle were under the influence of illegal substances at all times relevant to these events.

22.     Plaintiff turned on the overhead lights on her patrol car and blocked Ms. Zantjer's vehicle, being operated by Mr. Kingsbury, from exiting the Formula K Equipment Driveway with her patrol car. A third vehicle, a utility truck, was to the right of the vehicle, with the patrol car to the left.

23.     Plaintiff exited her patrol car with her service firearm raised to effect an arrest of Mr. Kingsbury and execute a felony traffic stop. Plaintiff walked to the front of the patrol car, towards Mr. Kingsbury in the stolen vehicle.

24.     Before Plaintiff could give any orders, within seconds of her exiting her patrol car, Mr. Kingsbury accelerated instead of getting out of the vehicle. From Plaintiff's vantage point, Mr. Kingsbury was driving the vehicle directly at her, and she believed Mr. Kingsbury intended to run her over with the vehicle.

25.     Plaintiff was aware that Mr. Kingsbury was going to do anything he could to avoid being arrested. He knew that his parole had been revoked and a warrant issued for his arrest, so if he were apprehended, he would face a lengthy

prison sentence for the remainder of his previous criminal sentence and for new charges.

26.     Several witnesses later acknowledged that it appeared from Plaintiff's position that Mr. Kingsbury was driving directly toward her. Ms. Zantjer told investigators that it appeared Mr. Kingsbury was driving the vehicle toward the patrol car. Other witnesses informed investigators that as Plaintiff walked in front of the stolen vehicle, Mr. Kingsbury accelerated, and Plaintiff had to move to get out of Mr. Kingsbury's path. Plaintiff's dashboard camera also recorded these events and supported these witnesses' accounts that it appeared that Mr. Kingsbury intended to try to run Plaintiff down with the vehicle he was driving.

27.     Mr. Kingsbury nearly struck Plaintiff's patrol car in order to maneuver the vehicle he was driving between the patrol car and utility vehicle. He erratically steered his vehicle around the patrol car and turned right at a high rate of speed onto Main Street in Mattawan.

28.     Fearing for her life and the lives of members of the public, Plaintiff fired her service weapon at Mr. Kingsbury's vehicle to stop him. Plaintiff fired six rounds at the vehicle in close proximity, shooting as the vehicle passed her in an attempt to halt Mr. Kingsbury as safely as possible. Plaintiff feared the risk to public safety if Mr. Kingsbury drove a vehicle while under the influence of methamphetamines and continued his status as a parole absconder in hiding

6

without being apprehended by law enforcement and brought to justice. Mr. Kingsbury escaped in the vehicle and left the area.

29.     Given Plaintiff's assessment of the scene at the time that Mr. Kingsbury attempted to run her over with a car and then fled the scene, Plaintiff reasonably concluded – based on the information then available to her – that the safety of any bystanders or potential bystanders would not be unreasonably jeopardized by the discharge of her firearm.

30.     Plaintiff reasonably determined that discharge of her firearm was necessary to attempt to prevent Mr. Kingsbury's escape.

31.     In fact, it was later determined that Mr. Kingsbury was indeed in possession of a firearm, which he threw out the window later as he escaped. The firearm was loaded with a round in the chamber. During the Michigan State Police ("MSP") investigation of this matter as an officer-involved shooting ("OIS"), Plaintiff reported her well-founded belief that Mr. Kingsbury likely had this firearm, but investigating officers failed to search the area properly at the time. A pedestrian eventually found the firearm along Main Street, only a few hundred feet away from where Plaintiff initially encountered Mr. Kingsbury, and a DNA test later confirmed the firearm belonged to Mr. Kingsbury.

32.     Mr. Kingsbury drove recklessly away from the scene, and at least one witness later testified that he nearly ran over pedestrians walking by a nearby

school. He eventually crashed his vehicle into a fence and fled the scene, running into the woods. The police eventually apprehended Mr. Kingsbury.

33.     The front seat passenger also fled the scene, entered Mattawan High School, and was apprehended by police shortly thereafter.

34.     Ms. Marschall was also apprehended and treated at the hospital for a minor injury to her right thigh that she sustained by bullet fragments from Plaintiff's service weapon or possible ricochet, which entered the vehicle operated by Mr. Kingsbury, and hit Ms. Marschall as she hid in the backseat. Upon information and belief, the minor bullet fragments were not removed as medical staff determined they would come to the skin surface on their own. Ms. Marschall sued Defendant Village over her injury, and eventually received a $250,000 settlement.

35.     Mr. Kingsbury was charged with two counts of unlawful use of a motor vehicle and assaulting or resisting a police officer. As part of a plea deal, Mr. Kingsbury later pleaded guilty to unlawful use of a motor vehicle.

36.     MSP, led by MSP Lt. Charles Christensen, investigated the incident because it was an OIS.

37.     Upon information and belief, Defendant Herbert participated in the MSP investigation, unduly influenced the investigation, and encouraged filing of a criminal charge against Plaintiff arising out of the OIS in an effort to shield himself and his department from scrutiny, and to support a termination of Plaintiff's employment with Defendant Village.

8

38.     During the time of Plaintiff's Employment, the Police Department Use of Force Policy explicitly stated:

Confrontation:

An officer may use deadly force, when in the officer's reasonable belief:

The deadly force is necessary to defend the officer or another from an immediate threat of death or serious physical injury; and

The safety of bystanders will not be unreasonably jeopardized by the officer's actions.
___

Fleeing Felons

An officer may use deadly force, including a firearm, to effect the capture of a suspect when the officer has personal knowledge that:

The suspect is fleeing from the commission of a crime involving the death or serious physical injury of the victim; and

The safety of bystanders will not be unreasonably jeopardized by the officer's actions; and

Deadly force is necessary to prevent the escape; and

If feasible, a verbal warning about the use of deadly force is given.

39.     Defendant Village placed Plaintiff on administrative leave immediately following the OIS.

40.     On or about November 16, 2017, or less than two weeks after the OIS, Lt. Christensen called Plaintiff and informed her that he provided his investigation report to Defendant Bedford, and that Defendant Bedford was criminally charging her with a felony. While discussing the charge, Lt. Christensen realized there was

9

an exception to this criminal felony charge for police officers, and he told Plaintiff he would go back to Defendant Bedford with information about the exception and call Plaintiff back. Several minutes later, Lt. Christensen called Plaintiff back and informed her she was being criminally charged instead with misdemeanor reckless discharge of a firearm, Mich. Comp. Laws § 752.863a.

41.     Defendant Bedford first authorized a criminal felony charge, and then a criminal misdemeanor charge, against Plaintiff despite the fact that there is clearly established law that permits a police officer to use deadly force to protect herself or the lives of other innocent parties and to prevent a felon from escaping if the office has probable cause to believe the suspect poses a dangerous threat to others.

42.     Despite Defendant Village's Confrontation Policy, Defendant Village discharged Plaintiff immediately upon Defendant Bedford's filing of a criminal charge against her. The Village did not provide any hearing before the immediate discharge of Plaintiff.

43.     Regarding dismissal, Defendant Village's Handbook provides the following:

> Dismissal: If a suspension fails to correct misbehavior or where more severe action is warranted, the Supervisor may recommend dismissal of the employee. The supervisor shall prepare a written statement describing the reason(s) dismissal is recommended, including a description of the unsuitable behavior, and action taken to date. The Supervisor, in the presence of the Village Manager, shall read the statement to the employee. Following the dismissal, the Supervisor

and the Village Manager shall sign the statement. Records of dismissal shall be a permanent part of the employee's personnel file.

44.    Defendant Herbert never prepared a written statement describing the reasons for terminating Plaintiff's employment, and otherwise failed to comply with Defendant Village's policies.

45.    On January 24, 2018, more than two months after Mr. Kingsbury's escape and the OIS, a pedestrian found the Mr. Kingsbury's firearm on the side of the road, exactly where Plaintiff insisted that it would have been during the MSP investigation. Defendant Herbert collected the firearm, but he failed to properly document or photograph its location. Defendant Herbert subsequently sent the firearm to the MSP Crime Lab for analysis. In March 2018, the Crime Lab requested Mr. Kingsbury's DNA for comparison to the DNA found on the firearm, but Defendant Herbert failed to provide the sample until October 2018. The MSP Crime Lab then determined that the DNA on the loaded gun was a match for Mr. Kingsbury.

46.    Plaintiff endured a lengthy and drawn out criminal charging and trial process as a criminal defendant, and she was subject to a pre-trial bond in order to secure her release before trial. The delay in processing the DNA match – once the gun was actually located – significantly delayed Plaintiff's trial.

47.    Plaintiff's criminal trial began in January of 2019.

48.    On or about January 25, 2019, a jury found Plaintiff not guilty.

11

49.     Upon information and belief, Defendant Bedford reviewed an almost identical situation involving South Haven Police Officer Kevin Wildey, a male officer, just five months before the OIS involving Plaintiff. Defendant Bedford did not file criminal charges against Officer Wildey.

50.     In the OIS involving Officer Wildey ("the Wildey OIS"), he responded to a 911 call indicating a disturbance at a residence involving Leo Berry, a felon with whom Officer Wildey was acquainted and whom he knew was wanted on felony charges.

51.     When Officer Wildey arrived on the scene, he saw Mr. Berry's vehicle, with Mr. Berry in the driver's seat and an unknown female passenger in the front seat. Unbeknownst to Officer Wildey, Mr. Berry's young son was also in the backseat. Officer Wildey came alongside the vehicle, and pointed his firearm directly at Mr. Berry, and ordered him and the female passenger to put their hands on the ceiling.

52.     In the later investigation, Officer Wildey reported that Mr. Berry then accelerated and swerved the vehicle directly at Officer Wildey. Officer Wildey claimed that he had to jump back to avoid the vehicle, and that he discharged his firearm "to stop from being run over." Office Wildey stated he stopped firing when the vehicle had passed him.

53.     Mr. Berry drove away but was later apprehended and arrested.

54.     Like with Plaintiff's OIS, MSP also investigated the Wildey OIS.

12

55.     Footage from Officer Wildey's body camera contradicted Office Wildey's version of events. According to the investigative report, the body camera shows that Office Wildey was standing "to the side of the vehicle" and that he shot at the vehicle after it went by him.

56.     South Haven Police Chief Natalie Thompson stated in a public comment that Officer Wildey's actions were against her department's protocol, and placed Officer Wildey on administrative leave.

57.     Defendant Bedford ultimately charged Mr. Berry with resisting and obstructing a police officer stemming from this incident.

58.     Defendant Bedford reviewed the Wildey OIS and determined that Officer Wildey's actions were appropriate. Defendant Bedford declined to file a criminal charge against Officer Wildey. In a letter to Chief Thompson, Defendant Bedford stated:

> The Prosecutor's office has thoroughly reviewed the above referenced reports regarding the shots fired by Officer Wildey during his encounter with Leo Berry in the driveway at the Pop residence on 6-14-17. In this regard, we conclude that the amount of force used by officer Wildey was appropriate to eliminate the risk of harm that Leo Berry created during his attempt to resist arrest and while fleeing the scene in his motor vehicle in a reckless and dangerous manner.

59.     Defendant Bedford authorized a criminal charge against Plaintiff and not Officer Wildey because Plaintiff was a female police officer.

60. Upon information and belief, Defendant Bedford made statements to others during the course of his criminal prosecution of Plaintiff about Plaintiff which were untrue and indicated a bias toward her fitness as a police officer solely because of her sex, including his believed reasons for the dissolution of Plaintiff's former marriage to a police officer who worked in a neighboring county.

61. Defendant Bedford intentionally discriminated against Plaintiff on the basis of her sex by selectively criminally prosecuting her for an incident that he would not have charged if Plaintiff was male.

62. As a result of the unlawful prosecution of Plaintiff and the unlawful loss of employment with Defendant Village, Plaintiff was unable to maintain employment throughout the duration of the subsequent trial. Even prospective employers with whom she met told her to come back after her trial.

63. Plaintiff has suffered severe economic harm. Without the ability to work and with the added cost of defending herself in a criminal trial, Plaintiff's financial status has been constantly in jeopardy.

64. Plaintiff has also suffered significant damage, including but not limited to, harm to her professional reputation and reputation in the community, mental anguish, and enduring a criminal prosecution and trial.

**Count I – Violation of the Equal Protection Clause of the Fourteenth Amendment as to Defendant Bedford Pursuant to 42 U.S.C. § 1983 – Selective Prosecution**

65.     Plaintiff relies on the allegations of all prior paragraphs, as if they were restated herein.

66.     Plaintiff is a member of a protected class and was unlawfully discriminated against because of her sex.

67.     Plaintiff was similarly situated in all relevant aspects to Officer Wildey.

68.     Nevertheless, despite the similarities between the OIS involving Plaintiff and the OIS involving Officer Wildey, Defendant Bedford only authorized charges against Plaintiff.

69.     Defendant Bedford's decision to initiate criminal prosecution against Plaintiff was unlawfully based on Plaintiff's female sex.

70.     All of Defendant Bedford's actions and those acting at the direction of Defendant Bedford, including the decision to charge Plaintiff with a crime, were done while Defendant Bedford acted under color or state of law and had the effect of depriving Plaintiffs of rights secured by the Constitution and laws of the United States, specifically the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

**Cause of Action**

71.     Defendant Bedford violated the Equal Protection Clause of the Fourteenth Amendment when he treated Plaintiff differently than a similarly situated male police officer who had engaged in the same or similar conduct.

72.     Plaintiff has suffered irreparable harm, in that she has been unlawfully discriminated against, and will continue to suffer such harm unless the relief requested herein is granted.

**Relief Sought**

WHEREFORE, Plaintiff requests that the Court grant her the following relief:

A.     Award Plaintiff economic damages;

B.     Award Plaintiff compensatory damages for mental anguish and emotional distress;

C.     Award Plaintiff punitive damages;

D.     Award Plaintiff her costs and reasonable attorney fees;

E.     Award Plaintiff such other relief as may be just and equitable.

**Count II - Violation of Mich. Comp. Laws § 37.2202(1)(a), ELCRA – Sex Discrimination as to Defendant Village**

73.     Plaintiff relies on the allegations of all prior paragraphs, as if they were restated herein.

16

74.     Defendant Village has violated Mich. Comp. Laws § 37.2202(1)(a) in that it terminated Plaintiff's employment and otherwise discriminated against her because of her sex.

75.     As a result of the foregoing, Plaintiff has lost earnings, bonuses and benefits, and suffered mental anguish and emotional distress for which Defendant is liable.

76.     Plaintiff has suffered irreparable harm in that she has been unlawfully terminated from her employment and will continue to suffer such harm unless the relief requested herein is granted.

<u>Relief Sought</u>

WHEREFORE, Plaintiff requests that the Court grant her the following relief:

A.     Restore Plaintiff to her position as a police officer or such other position for which she is qualified;

B.     Award Plaintiff damages equal to any salary, wages, bonuses, employment benefits and/or other compensation denied or lost to her by reason of violations of ELCRA by Defendant, plus interest;

C.     Award Plaintiff compensatory damages for mental anguish and emotional distress;

D.     Award Plaintiff exemplary damages;

E.     Award Plaintiff her costs and reasonable attorney fees;

F.     Award Plaintiff such other relief as may be just and equitable.

## Count III – Violation of the Fourth Amendment to the U.S. Constitution–<br>Malicious Prosecution as to Defendant Herbert

77.    Plaintiff relies on the allegations of all prior paragraphs, as if they were restated herein.

78.    Defendant Herbert maliciously made, influenced, and participated in the decision to prosecute Plaintiff with malice.

79.    There was no probable cause to support the charge against Plaintiff.

80.    Plaintiff suffered a deprivation of liberty because she was subject to a pre-trial bond and Court supervision while she waited to be tried by a jury.

81.    As a result of the foregoing, Plaintiff has lost earnings, bonuses and benefits, and suffered mental anguish and emotional distress for which Defendant Herbert is liable.

82.    Plaintiff has suffered irreparable harm in that she has been unlawfully terminated from her employment as a result of the unlawful institution of criminal prosecution against Plaintiff and will continue to suffer such harm unless the relief requested herein is granted.

## Relief Sought

WHEREFORE, Plaintiff requests that the Court grant her the following relief:

A.    Award Plaintiff past economic damages;

B.    Award Plaintiff future economic damages, or order that she be returned to her past position or an equivalent employment position;

C.  Award Plaintiff compensatory damages for mental anguish and emotional distress;

D.  Award Plaintiff punitive damages;

E.  Award Plaintiff her costs and reasonable attorney fees;

F.  Award Plaintiff such other relief as may be just and equitable.

### Count IV – Violation of Mich. Comp. Laws § 600.2907– Malicious Prosecution as to Defendant Herbert

83.   Plaintiff relies on the allegations of all prior paragraphs, as if they were restated herein.

84.   Defendant Herbert maliciously instituted or continued criminal proceedings against Plaintiff with malice, causing injury to Plaintiff's fame, person, and liberty, despite the lack of probable cause to support the charges.

85.   As a result of the foregoing, Plaintiff has lost earnings, bonuses and benefits, and suffered mental anguish and emotional distress for which Defendant Herbert is liable.

86.   Plaintiff has suffered irreparable harm in that she has been unlawfully terminated from her employment as a result of the unlawful institution of criminal prosecution against Plaintiff and will continue to suffer such harm unless the relief requested herein is granted.

### Relief Sought

WHEREFORE, Plaintiff requests that the Court grant her the following relief:

A.  Award Plaintiff past economic damages;

B.  Award Plaintiff future economic damages, or order that she be returned to her past position or an equivalent employment position;

C.  Award Plaintiff compensatory damages for mental anguish and emotional distress;

D.  Award Plaintiff punitive damages;

E.  Award Plaintiff her costs and reasonable attorney fees;

F.  Award Plaintiff such other relief as may be just and equitable.


PINSKY, SMITH, FAYETTE & KENNEDY, LLP
Attorneys for Plaintiff


Dated: May 22, 2019          By:   /s/ Sarah R. Howard
                                      Sarah Riley Howard
                                      Crystal J. Bultje
                                      146 Monroe Center, N.W., Suite 805
                                      Grand Rapids, MI 49503
                                      (616) 451-8496
                                      showard@psfklaw.com

## JURY DEMAND

To the extent jury trial is allowed with regard to any of the issues as set forth above, Plaintiff demands the same.

PINSKY, SMITH, FAYETTE & KENNEDY, LLP
Attorneys for Plaintiff


Dated: May 22, 2019          By:   /s/ Sarah R. Howard
                                  Sarah Riley Howard
                                  Crystal J. Bultje
                                  146 Monroe Center, N.W., Suite 805
                                  Grand Rapids, MI 49503
                                  (616) 451-8496
                                  showard@psfklaw.com

21