UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

CHELSEY OMILIAN,

    Plaintiff,

v.

MICHAEL BEDFORD, Van Buren County
Prosecutor, in his individual and
official capacities; SCOTT HERBERT, Police
Chief for the Village of Mattawan in his
individual and official capacities; and
VILLAGE OF MATTAWAN, MICHIGAN,

    Defendant.

Case No. 1:19-cv-407
Hon. Janet T. Neff

<u>**ORAL ARUMENT REQUESTED**</u>

| | |
|---|---|
| Sarah Riley Howard<br>Crystal J. Bultje<br>Attorneys for Plaintiff<br>Pinsky, Smith, Fayette & Kennedy, LLP<br>146 Monroe Center, NW, Suite 805<br>Grand Rapids, MI 49503<br>(616) 451-8496<br>showard@psfklaw.com<br>cbultje@psfklaw.com | Michael S. Bogren<br>Attorneys for Defendant Bedford<br>Plunkett Cooney<br>950 Trade Centre Way, Suite 310<br>Kalamazoo, MI 49002<br>(269) 226-8822<br>mbogren@plunkettcooney.com<br><br>G. Gus Morris<br>Stacy J. Belisle<br>Christopher J. Raiti<br>Attorneys for Def Herbert and Village<br>McGraw Morris P.C.<br>2075 W. Big Beaver Road, Ste. 750<br>Troy, MI 48084<br>(248) 502-4000<br>gmorris@mcgrawmorris.com<br>sbelisle@mcgrawmorris.com<br>craiti@mcgrawmorris.com |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT BEDFORD'S
MOTION FOR JUDGMENT ON THE PLEADINGS**

1

This Court should deny Defendant Bedford's Motion for Judgment on the Pleadings because Defendant Bedford took unconstitutional administrative and investigative actions against Plaintiff, based selectively on her sex, for which immunity does not apply.

## FACTS

This matter involves two police officer-involved shootings (OIS) in the same county, involving similar fact patterns – but one with a female officer, Plaintiff, and one with a man, Officer Wildey. Defendant Bedford, the county prosecutor, pursued a pre- and post-charge course of action against Plaintiff, but not Officer Wildey, based on Plaintiff's sex.

On November 3, 2017, Plaintiff, while in pursuit of a stolen automobile and the felon she knew to be operating it, was involved an OIS, for which she was charged criminally—despite the fact that she was an on-duty police officer in pursuit of a felon, with a reasonable belief that both she and the public were in danger if she allowed the felon to escape. (Complaint, PageID.3-5, 10 ¶ 12,17-25, 41.) Plaintiff investigated a complaint of a stolen automobile, and she knew the person who was likely operating the stolen vehicle, Gary Kingsbury, was a felon and a wanted parole absconder, likely armed with a .38 firearm, and likely under the influence of methamphetamines or other illegal substances. (Complaint, PageID.3-4, ¶ 13, 14, 15, 18.)

2

When Plaintiff located the vehicle at an intersection, she could see that Mr. Kingsbury was indeed driving the vehicle, with a female passenger, Lacie Tutt, in the front seat. (Complaint, PageID.4, ¶ 17.) Unbeknownst to Plaintiff, another passenger, Cassie Marschall, was hiding in the backseat as well. (Complaint, PageID.4, ¶ 17.) Plaintiff turned on the overhead lights on her patrol car and partially blocked Mr. Kingsbury from driving away, while exiting the car with her service firearm raised to effect Mr. Kingsbury's arrest. (Complaint, PageID.5, ¶ 22, 23.) However, before she could even order Mr. Kingsbury out of the stolen car, he accelerated the vehicle towards her. (Complaint, PageID.5, ¶ 24.)

Plaintiff knew Mr. Kingsbury would do anything to avoid to lengthy prison sentence he would face if he were apprehended, and she also knew that he was likely high on methamphetamines. When he accelerated, it appeared that he was driving directly at her, with the intention of hitting her. (Complaint, PageID.5-6¶ 25, 26.) Plaintiff's dashboard camera recorded these events, confirms that he was attempting to run Plaintiff down, and shows that he nearly struck her patrol car with his vehicle in order to get away. (Complaint, PageID.6, ¶ 26, 27.)

Fearing for her life and the lives of members of the public if he were to escape in this manner and while under the influence of methamphetamines, Plaintiff fired her service weapon at Mr. Kingsbury's vehicle to stop him. (Complaint, PageID.6,¶ 28.) She fired six rounds at the vehicle in close proximity, shooting as the vehicle passed her in an attempt to halt Mr. Kingsbury as safely as possible. (Complaint,

3

PageID.6,¶ 28.) Given Plaintiff's assessment of the scene at the time that Mr. Kingsbury attempted to run her over with a car and then fled the scene, Plaintiff reasonably concluded – based on the information then available to her – that the safety of any bystanders or potential bystanders would not be unreasonably jeopardized by the discharge of her firearm. (Complaint, PageID.7, ¶ 29.)

Plaintiff's concerns about the danger Mr. Kingsbury presented were ultimately proven correct. It was later determined that Mr. Kingsbury was indeed in possession of a firearm that day – and it was loaded with a round in the chamber. (Complaint, PageID.7, ¶ 31.) He also drove away from the scene as recklessly as Plaintiff feared, with at least one witness confirming that he nearly struck pedestrians walking to a nearby school. (Complaint, PageID.7-8, ¶ 32.) Mr. Kingsbury eventually drove into a residential area, crashed the vehicle into a fence, and fled into the woods, only to be apprehended by police later. (Complaint, PageID.7-8, ¶ 32.) He was subsequently charged with two counts of unlawful use of a motor vehicle and assaulting or resisting a police officer. (Complaint, PageID.8, ¶ 35.)

Police also apprehended the other passengers in the stolen vehicle. They found and arrested Ms. Tutt after she fled the scene and entered Mattawan High School. (Complaint, PageID.8, ¶ 33.) The second passenger, Ms. Marschall, was apprehended and treated at the hospital for a minor injury she sustained from bullet fragments or possible ricochet when she was hiding and/or passed out in the

4

backseat of the stolen vehicle. (Complaint, PageID.8, ¶ 34.) Upon information and belief, the minor bullet fragments were not removed, as medical staff determined they would come to the skin surface on their own. (*Id.*)

MSP investigated the OIS, with a significant and unusual amount of help from both Defendants Herbert and Bedford. (Complaint, PageID.8, 9 ¶ 36, 37, 40.) Defendant Herbert is the chief of police for the Village of Mattawan, who employed Plaintiff. Specifically, for purposes of this Motion, Defendant Bedford engaged in a pre- and post-charge course of action against Plaintiff, due to her gender, that he did not initiate against a male police officer in a strikingly similar situation just a few months earlier, involving South Haven Police Officer Kevin Wildey. (Complaint, PageID.12, ¶ 49.)

In the previous OIS, Office Wildey responded to a 911 call and encountered Leo Berry, whom Officer Wildey knew had a felony record and was wanted on additional felony charges. (Complaint, PageID.12, ¶ 50.) Just like with Plaintiff's OIS, Officer Wildey attempted to make an arrest, but Mr. Berry drove away, and Officer Wildey discharged his weapon towards the car. (Complaint, PageID.8, ¶ 52.) Also like the OIS involving Plaintiff, Officer Wildey stated he discharged his firearm in order to "stop from being run over" – however, unlike in Plaintiff's case, Officer Wildey's bodycam footage contradicted his version, and it showed that Officer Wildey was never in danger of being hit by the vehicle, and he only shot after it as it went by him. (Complaint, PageID.13, ¶ 55.) South Haven Police Chief Natalie

5

Thompson stated publicly that Officer Wildey's actions were against her department's protocol, and she placed him on administrative leave. (Complaint, PageID.13, ¶ 56.)

Defendant Bedford concluded that Officer Wildey's actions were nevertheless appropriate and he took administrative steps in order to advocate on Officer Wildey's behalf with the City of South Haven. (Complaint, PageID.13, ¶ 58.) In a letter subsequently sent to Chief Thompson, Defendant Bedford made an unusual public statement about the situation, specifically opining that "the amount of force used by Officer Wildey was appropriate to eliminate the risk of harm that Leo Berry created during his attempt to resist arrest and while fleeing the scene in his motor vehicle in a reckless and dangerous manner." (Id.)

Defendant Bedford handled Plaintiff's case entirely differently than Officer Wildey's in every way, beyond his decision to charge one over the other. In addition to participating significantly in the investigation itself, he also made numerous statements to others about Plaintiff that were not only untrue, but that also showed his bias towards her, including sharing his opinion as to why her marriage to a police officer in a neighboring county fell apart. (Complaint, PageID.14, ¶ 60.) Despite the public statement Defendant Bedford made about Officer Wildey advocating for him to keep his employment, he made no such statement about Plaintiff, and she subsequently lost her job and endured a very public, difficult criminal trial, in which the jury acquitted her. (Complaint, PageID.14, ¶ 62-64.)

6

# ARGUMENT

## I. Standard of Review

Judgement on the pleadings is proper when "no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *Paskvan v. Cleveland Civil Serv. Comm'n*, 946 F.2d 1233, 1235 (6th Cir. 1991). The plaintiff's complaint "must contain direct *or inferential* allegations respecting all the material elements under some viable legal theory." *Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.,* 508 F.3d 327, 336 (6th Cir. 2007) (emphasis added). The court construes all allegations in the complaint in the light most favorable to the nonmoving party and accepts the well-plead factual allegations as true. *Id.*

## II. Defendant Bedford is not entitled to absolute immunity under the facts of this matter because he was not functioning as an advocate for the state when he violated Plaintiff's constitutional rights.

This Court should deny Defendant Bedford's claim of absolute prosecutorial immunity because such immunity does not apply to the pre-charge, quasi-investigative, and administrative actions he took. Instead, Bedford's acts, which constituted unlawful sex discrimination, are not shielded by prosecutorial immunity.

A prosecutor has absolute immunity only when he acts "within the scope of his duties in initiating and pursuing a criminal prosecution." *Adams v. Hanson*, 656 F.3d 397, 399, 401 (6th Cir. 2011) (quoting *Imbler v. Pachtman,* 424 U.S. 409, 430 (1976)). Immunity is not intended to protect a prosecutor with respect to "every

7

litigation-inducing conduct," *Burns v. Reed*, 500 U.S. 478, 494 (1991), and as such, it does not cover activities such as giving legal advice to the police, preliminarily gathering evidence that may ripen into a prosecution, or making a statement at a press conference. *Adams*, 656 F.3d at 402.

In analyzing whether a prosecutor's actions entitle him to absolute immunity, courts use a "functional approach," considering "the nature of the function performed, not the identity of the actor who performed it." *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993). In other words, "the actions of a prosecutor are not absolutely immune merely because they are performed by a prosecutor." *Id.* at 273. Ultimately, "the analytical key to prosecutorial immunity . . . is advocacy – whether the actions in question are those of an advocate." *Skinner v. Govorchin,* 463 F.3d 518, 525 (6th Cir. 2006). It is the burden of the "official seeking absolute immunity" to show "that such immunity is justified for the function in question." *Burns*, 500 U.S. at 486.

A prosecutor's investigatory functions are not entitled to absolute immunity. *Buckley*, 509 U.S. at 273. In *Buckley*, the fact that the prosecutors' actions occurred before an indictment and an arrest meant that they did so "well before they could properly claim to be acting as advocates" – so absolute immunity did not apply. *Id.* at 275. "A prosecutor neither is, nor should consider himself to be, an advocate before he has probable cause to have anyone arrested." *Id.* at 274.

The *Buckley* Court explained the distinction as follows:

8

> There is a difference between the advocate's role in evaluating evidence and interviewing witnesses as he prepares for trial, on the one hand, and the detective's role in searching for the clues and corroboration that might give him probable cause to recommend that a suspect be arrested, on the other hand. When a prosecutor performs the investigative functions normally performed by a detective or police officer, it is neither appropriate nor justifiable that, for the same act, immunity should protect the one and not the other. Thus, if a prosecutor plans and executes a raid on a suspected weapons cache, he has no greater claim to complete immunity than activities of police officers allegedly acting under his direction.

*Id.* at 273-74 (internal quotations omitted).

Thus, the only activities protected at this stage are limited to the "professional evaluation of the evidence assembled by the police and appropriate preparation for its presentation at trial or before a grand jury." *Id. See Harris v. Bornhorst*, 513 F.3d 503, 510 (6th Cir. 2008) (prosecutor not entitled to absolute immunity when deciding whether a subject should be arrested). A prosecutor's administrative or investigative work does not become immune "merely because, after a suspect is eventually rested, indicted, and tried, that work may be retrospectively described as 'preparation' for a possible trial." *Buckley*, 509 U.S. at 276.

A prosecutor's activities beyond those of an advocate are also not entitled to absolute immunity. For instance, in *Buckley*, the court determined that a prosecutor's statements to the media were not entitled to absolute immunity. 509 U.S. at 277. The court reasoned that "[s]tatements to the press may be an integral part of a prosecutor's job," but that such statements "have no functional tie to the

9

judicial process just because they are made by a prosecutor" and therefore, they are not protected by absolute immunity. *Id.* at 278.

Here, Defendant Bedford's actions do not warrant absolute immunity. As alleged in the Complaint, Defendant Bedford made numerous statements that had absolutely nothing to do with his role in the judicial process. Namely, he interacted with the investigation against Plaintiff and made a public statement to Chief Thompson, defending his position on non-prosecution and Wildey's acts, while making statements to others regarding Plaintiff and the alleged reasons for his decision to prosecute her. (Complaint, PageID.10, 13, ¶ 40, 58, 60.) Just as in *Buckley*, in which the court considered a prosecutor's statements at a press conference, these statements "have no functional tie to the judicial process just because they are made by a prosecutor" and therefore, they are not protected by absolute immunity. *Buckley*, 509 U.S. at 278.

Defendant Bedford attempts to distinguish *Buckley* from Plaintiff's claim, arguing that the prosecutor's statements to the press there were only shielded by absolute immunity because of the nature of the statements, but the *Buckley* court made no such distinction. Instead, the court opined in no uncertain terms that "[t]he conduct of a press conference does not involve the initiation of a prosecution, the presentation of the state's case in court, or actions preparatory for these functions," and as such, "a prosecutor is in no different position than other executive officials who deal with the press"—who are not protected by absolute immunity. *Id.*

10

at 278. Indeed, Defendant Bedford made these statements evidently *after* deciding not to prosecute, so they could not have related to the preparation, initiation, or presentation of prosecution.

The Sixth Circuit addressed the issue of absolute immunity again in *Red Zone 12 LLC v. City of Columbus*, 758 F. App'x 508 (6th Cir. 2019)—but this case has no applicability to the case at hand. In *Red Zone*, the plaintiffs alleged the city attorney had used selective enforcement against them in pursuing a nuisance abatement action. *Id.* at 514. To support their claims, the plaintiffs alleged that the city attorney had "negotiated" with them to "change the use of their property," that he had instructed his assistant "to refuse to disclose" information about the investigation against them, and "refused to dismiss the nuisance action." *Id.* The *Red Zone* court denied the plaintiffs' claims, concluding all the alleged conduct "centered around his initiation and prosecution of the nuisance abatement suit" and was "undertaken in connect with [the city attorney's] duties in functioning as a prosecutor." *Id.*

*Red Zone* is inapplicable to the instant case because, unlike the allegations there, Plaintiff has alleged conduct that went beyond Defendant Bedford's prosecution of her. Plaintiff does not complain that Defendant Bedford refused to stop prosecuting her, or that he refused to tell her the evidence he had against her—rather, she alleges that he participated in the investigation and made comments to others that were wholly irrelevant to and not part of his job as an

11

advocate for the state.

Defendant Bedford incorrectly asserts that Plaintiff is requesting a new exception to absolute immunity for prosecutorial immunity. To the contrary, Plaintiff has sufficiently pled allegations of Defendant Bedford's conduct for which he is not entitled to absolute immunity under existing law. For purposes of Defendant's Motion, Plaintiff is only required to plead "direct or inferential" allegations that address the material elements of the claim—this, she has done.

### III. Defendant Bedford is also not entitled to qualified immunity.

Defendant Bedford's actions are were taken outside the scope of his role as advocate would be eligible for qualified immunity; however, given the nature of his conduct, qualified immunity will not afford him protection here either.

"Where an official could be expected to know that certain conduct would violate statutory or constitutional rights, he should be made to hesitate; and a person who suffers injury caused by such conduct may have a cause of action." *Harlow v. Fitzgerald*, 457 U.S. 800, 819 (1982). Government officials performing discretionary functions can be liable for civil damages when their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 818. In making a determination regarding qualified immunity, the court "determines whether a violation of plaintiff's constitutional rights has occurred," then "asks if the violation involved a clearly established constitutional right of which a reasonable person would have known," and finally

12

"determines if the plaintiff has offered evidence sufficient to show that the official's conduct was objectively unreasonable in light of the clearly established constitutional right at issue." *Gray v. City of Detroit*, 399 F.3d 612, 615 (6th Cir. 2005) (internal quotations omitted).

"A constitutional right is clearly established where its contours are sufficiently clear that a reasonable official would understand that what he is doing violates that right —in other words, where it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Daily Servs., LLC v. Valentino*, 756 F.3d 893, 900 (6th Cir. 2014) (internal quotations omitted). "It is well-established and unassailable that 'a reasonably competent public official should know the law governing his conduct.'" *Id.* at 903-04 (quoting *Harlow,* 457 U.S. at 819 (1982)). "The threshold inquiry a court must undertake in a qualified immunity analysis is whether plaintiff's allegations, if true, establish a constitutional violation." *Hope v. Pelzer*, 536 U.S. 730, 736 (2002).

Here, the Defendant Bedford's actions violated Plaintiff's clearly established right to Equal Protection. This right to equal treatment under the law is unquestionably "clearly established." *See Rondigo, L.L.C. v. Township of Richmond*, 641 F.3d 673, 681 (6th Cir. 2011). Accepting Plaintiff's allegations as true, if Defendant Bedford discriminated against Plaintiff on account of her gender, this is a violation of her right to Equal Protection. Furthermore, Defendant Bedford knew or reasonably that handling such discriminatory conduct—first a public statement

13

in favor of Officer Wildey, followed by his discriminatory statements against Plaintiff for the same or similar conduct—would be a violation of this clearly established right.

### IV. Unrestricted discovery should proceed during motion practice (if any).

The Rules of Civil Procedure and this Court's Case Management Order provide the parties' right to engage in discovery, and neither limits nor prohibits discovery when a motion is pending. (Plaintiff acknowledges, though, Bedford's counsel has previewed potential objections on this point.) Moreover, Plaintiff agrees with Defendants Herbert and Village that discovery from Bedford may likely be relevant to the claims against those defendants. Finally, Plaintiff has sufficiently pleaded acts by Bedford which, if true, violate her constitutional rights and which are not protected by any immunity under the case law. Justice requires that Plaintiff be afforded the opportunity to collect evidence to prove her pleaded allegations.

### CONCLUSION

Plaintiff respectfully requests that this Court deny Defendant Bedford's Motion for Judgment on the Pleadings. Alternatively, Plaintiff asks that discovery continue unfettered during motion practice, including an unrestricted deposition of Defendant Bedford.

```
                                   PINSKY, SMITH, FAYETTE & KENNEDY, LLP
                                   Attorneys for Plaintiff Chelsey Omilian

Dated: November 4, 2019        By: /s/ Sarah R. Howard
```

Sarah Riley Howard
Crystal J. Bultje
146 Monroe Center, N.W., Suite 805
Grand Rapids, MI 49503
(616) 451-8496
showard@psfklaw.com

15